Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Kevin Gerard O'Grady
Law Office of Kevin O'Grady, LLC
1136 Union Mall, Suite 808
Honolulu, Hawaii 96813
(808) 521-3367
Hawaii Bar No. 8817
Kevin@KevinOGradyLaw.Com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| BENJAMIN NELSON, COREY KAHALAWEI, KIRK KAMA, HAWAII FIREARMS COALITION, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action _____ |
| CITY AND COUNTY OF HONOLULU, | ) ) ) | Memorandum in Support of Motion for Preliminary Injunction |
| Defendant. | ) ) ) ) | |

i

## Table of Authorities

**Cases**

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ................6

*Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) ............................. 5, 10, 26, 28

*Brown v. Board of Education*, 347 U.S. 483 (1954) ........................................ 16, 17

*Brown v. Board of Education*, 349 U.S. 294 (1955) ................................................17

*Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778 (2d Cir. 2007) .................. 18, 22

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) ...................................18

*Cooper v. Aaron*, 358 U.S. 1 (1958) ................................................................ 16, 17

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ................................................8

*Donald J. Trump for President, Inc. v. Bullock*, No. CV 20-66-H-DLC, 2020 U.S. Dist. LEXIS 169794, at *2 (D. Mont. Sep. 16, 2020) ..........................................31

*Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073 (9th Cir. 2014).............................27

*East Bay Sanctuary Covenant v. Trump*, 349 F.Supp.3d 838 (N.D. Cal. 2018) ....30

*Elliott v. Kiesewetter*, 98 F.3d 47 (3d Cir. 1996)....................................................30

*Elrod v. Burns*, 427 U.S. 347 (1976).......................................................................26

*Espinoza v. Montana Department of Revenue*, 140 S. Ct. 2246 (2020).................13

*Ezell v. City of Chi.*, 651 F.3d 684. (7th Cir. 2011) ..................................................27

*FDIC v. Mallen*, 486 U.S. 230 (1988).....................................................................21

*Firearms Policy Coalition, Inc. v. McCraw*, No. 4:21-CV1245-P, 2022 WL 3656996, at *11 (N.D. Tex. Aug. 25, 2022) ........................................................................11

*Fisher v. Kealoha*, 2012 U.S. Dist. LEXIS 90734, *40, 2012 ..................................27

*Foucha v. Louisiana*, 504 U.S. 71 (1992) ..................................................................22

*Samson v. City of Bainbridge Island*, 683 F.3d 1051 (9th Cir. 2012) .....................23

*Heller v. Doe*, 509 U. S. 312, 319-320 (1993) ...............................................8, 11, 24

*Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009) ...................................... 29, 30

*Kennedy v. Louisiana*, 554 U.S. 407 (2008) ............................................................13

*Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009). ...............................27

*Koons v. Platkin*, 2023 WL 3478604, at *108 (D.N.J. May 16, 2023).............. 14, 29

*Kuck v. Danaher*, 600 F.3d 159 (2d Cir. 2010) .......................................... 19, 20, 21

*Lara v. Comm'r Pa. State Police*, No. 21-1832, 2024 U.S. App. LEXIS 1159, (3d Cir. Jan. 18, 2024) ..................................................................................................12

*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) 19, 20

*May v. Bonta*, 2023 WL 8946212, at *19 (C.D. Cal. Dec. 20, 2023) ........................28

*McDonald v. City of Chicago*, 561 U.S. 742 (2010)................................................23

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012)................................................26

*Memorial Hospital v. Maricopa County*, 415 U.S. 250 (1974)...............................16

*Monell v. Dep't of Soc. Servc.*, 436 U.S. 658 (1978) .................................................7

*Monterey Mech. Co. v. Wilson*, 125 F.3d 702 (9th Cir. 1997)..................................26

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022)................... passim

*Nunez v. City of Los Angeles*, 147 F.3d 867 (9th Cir. 1998) ...................................22

*People of the State of Cal. ex rel. Van De Kamp v. Tahoe Regency Planning Agency*, 766 F.2d 1319, (9th Cir. 1985) ...............................................30

*Preminger v. Principi*, 422 F.3d 815 (9th Cir. 2005). ...............................27

*Reno v. Flores*, 507 U.S. 292 (1993)........................................................23

*Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707 (9th Cir. 2022)....................5

*Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013) ...............................28

*Rogers v. Hacker*, 2023 WL 5529812, at *8 (S.D. Ill. Aug. 28, 2023)...................16

*Santucci v. City & Cty. of Honolulu*, 2022 U.S. Dist. LEXIS 213030 (D. Haw. Nov. 23, 2022) ...........................................................................2, 21

*Srour v. New York City*, 2023 U.S. Dist. LEXIS 190340 .......................................18

*United States v. Harrison*, No. CR-22-00328-PRW, 2023 WL 1771138, at *8 (W.D. Okla. Feb. 3, 2023) .........................................................12

*United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023) ...............................9

*United States v. Verdugo-Urquidez*, 494 U.S. 259, 265, 110 S. Ct. 1056, 108 L. Ed. 2d 222 (1990).........................................................................9

*Valle del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013)....................................28

*Weaver v. City of Montebello*, 370 F.Supp.3d 1130 (C.D. Cal. 2109)...................29

*Wolford v. Lopez*, 2023 WL 5043805, at *32 (D. Haw. Aug. 8, 2023) ....................29

*Worth v. Harrington*, 2023 WL 2745673 at *11 (D. Minn. Mar. 31, 2023) ...........11

*Young v. Hawaii*, 896 F.3d 1044, 1071 n.21 (9th Cir. 2018)......................................1

**Statutes**

42 U.S.C. § 1983 ................................................................................................5

H.R.S. § 134-9(j) ..........................................................................................1, 19

H.R.S. §134-9(j) ..............................................................................................17

**Other Authorities**

Mark W. Smith, *'Not all History is Created Equal': In the Post-Bruen World, the Critical Period for Historical Analogues Is when the Second Amendment Was Ratified in 1791, and not 1868*, SSRN, Oct. 1, 2022, https://bit.ly/3CMSKjw .....9

**Rules**

Rule 65(a)(2) of the Federal Rules of Civil Procedure ...........................................23

**Treatises**

11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.1 (2d ed. 1995) ....................................................................................................................20

**Regulations**

License to Carry Firearms, Cumberland Cnty., Pa. https://www.cumberlandcountypa.gov/3094/License-to-Carry-Firearms (last visited Jan. 31, 2024) ...........................................................................................16

# Contents

**Introduction** ................................................................................................ vi

**Statement of Facts** .......................................................................................2

**Standard for Preliminary Injunction** ......................................................4

**The County is Liable Pursuant to Monell** ...............................................5

**Plaintiff Has a Strong Likelihood of Success on the Merits** ..................6

**Plaintiffs' Conduct is Covered by the Second Amendment's Plain Text** ...........7

**The City's Excessive Delay Violate Procedural Due Process** ..............14

**The City's Policy Violates Substantive Due Process Because it is Ultra Vires** .17

**Plaintiffs will suffer irreparable harm** ..................................................20

**Granting the PI is in the Public Interest and Serves Equity** ..............21

**Waiver of Bond is Proper and Appropriate Under These Circumstances** ......22

**This Court Should Consolidate Pursuant to Rule 65(a)(2)** ................23

**Conclusion** .................................................................................................24

# Introduction

Up until recently, the City and County of Honolulu ("County") almost never issued handgun carry permits.[1] The Supreme Court's decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), compelled the County to issue permits to carry handguns. This it has done reluctantly.  It has put in place a series of policies which unconstitutionally restrict the rights of county residents.  At issue here are the excessive wait times taken by the County to process concealed carry applications.  State law requires that concealed carry weapons ("CCW") applications be processed within a reasonable amount of time and applications which are pending for more than 120 days are deemed denied. *See* H.R.S. § 134-9(j). Plaintiffs are Honolulu residents who are fully qualified to concealed carry, have applied for CCW permits and have waited longer than 120 days.  They seek a preliminary injunction compelling the County to process their applications immediately. And compelling the County to process all applications within 120 days.   As Judge Watson has found, "[i]t is in the public interest to have the language of Hawaiʻi law enforced".[2] As shown below, Plaintiffs easily fulfill the

---

[1] "Hawaii counties appear to have issued only *four* concealed carry licenses in the past *eighteen years. See* 2000 Haw. Att'y Gen. Reps., *Firearm Registrations in Hawaii, 2000 et seq.*" *Young v. Hawaii*, 896 F.3d 1044, 1071 n.21 (9th Cir. 2018)

[2] *Santucci v. City & Cty. of Honolulu*, 2022 U.S. Dist. LEXIS 213030 (D. Haw. Nov. 23, 2022).

standard for a preliminary injunction.  A preliminary injunction should issue.

## <u>Statement of Facts</u>

Plaintiffs are three Honolulu residents who have had their CCW applications delayed for more than 120 days and a nonprofit firearms advocacy organization who has members who have had their CCW applications delayed for more than 120 days. Plaintiff Nelson is a U.S. citizen, a male, and a resident of Honolulu County. Complaint ¶ 56.  Plaintiff Nelson legally owns two pistols. Complaint ¶ 57. Plaintiff Nelson is not disqualified under Hawaii or federal law from owning, possessing or carrying a firearm, including in a concealed manner. Complaint ¶ 58. Plaintiff Nelson has completed all requirements under Hawaii law and County regulation to be issued a CCW. Complaint ¶ 59. Plaintiff Nelson applied for a CCW by submitting all necessary paperwork to County on or about March 15, 2023. Complaint ¶ 60. Plaintiff Nelson has not received an approval or a denial or any written communication from County regarding his CCW application since March 2023. Complaint ¶ 61.

Plaintiff Kahalewai is an adult male, U.S. citizen and resident of Honolulu County. Complaint ¶ 66. Plaintiff Kahalewai legally owns a firearm. Complaint ¶ 67. Plaintiff Kahalewai is not disqualified under Hawaii or federal law from owning, possessing or carrying a firearm, including in a concealed manner. Complaint ¶ 68. Plaintiff Kahalewai has completed all requirements under Hawaii

2

law and County regulation to be issued a CCW. Complaint ¶ 69. Plaintiff

Kahalewai applied for a CCW in or about the month of May 2023 and submitted

all necessary documentation. Complaint ¶ 70.  Plaintiff Kahalewai was in contact

with County in or about the month of September 2023 and was informed that a

portion of his CCW application had been misplaced or lost.  Complaint ¶ 71.

Plaintiff Kahalewai replaced the missing documentation at County's request and

submitted a second CCW application in or around September 2023.  *Id.* Plaintiff

Kahalewai was emailed on or about October 6, 2023 and was informed that his

application was being processed. *Id.* Plaintiff Kahalewai has not received an

approval or a denial or any written communication from County regarding his

CCW application since October 2023. Complaint ¶ 72.

Plaintiff Kama is an adult male, U.S. citizen and resident of the state of

Hawaii. Complaint ¶ 77. Plaintiff Kama legally owns a firearm. Complaint ¶ 78.

Plaintiff Kama is not disqualified under Hawaii or federal law from owning,

possessing or carrying a firearm, including in a concealed manner. Complaint ¶ 79.

Plaintiff Kama has completed all requirements under Hawaii law and County

regulation to be issued a CCW. Complaint ¶ 80. Plaintiff Kama applied for a CCW

in or about the month of March 2023 and submitted all necessary documentation.

Complaint ¶ 81. Plaintiff Kama has not received an approval or a denial or any

written communication from County regarding his CCW application since March 2023. Complaint ¶ 82.

Plaintiff Hawaii Firearms Coalition (HIFICO) is a member driven organization incorporated under the laws of the State of Hawaii with its principal place of business in Honolulu, Hawaii. Hawaii Firearms Coalition promotes legislative and legal action, as well as research, publishing, and advocacy, in support of people's civil liberties.  Complaint ¶ 4. HIFICO has over 388 members in Hawaii including many in Honolulu County as well as all the other Hawaiian counties with valid concealed carry permits. *Id.* Plaintiff HIFICO has members that are either United States Citizens or legal permanent residents, who are not disqualified under federal or state law from the acquisition, possession, ownership or carriage of firearms, who have completed all requirements necessary to have a CCW issued pursuant to state law and County rules, and have submitted an application for CCW and have not received an approval or denial within or up to one-hundred-twenty (120) days after submission of the CCW application. Complaint ¶ 87.

## **Standard for Preliminary Injunction**

"The appropriate legal standard to analyze a preliminary injunction motion requires a district court to determine whether a movant has established that (1) he is likely to succeed on the merits of his claim, (2) he is likely to suffer irreparable harm

absent the preliminary injunction, (3) the balance of equities tips in his favor, and (4) a preliminary injunction is in the public interest." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). "It is well-established that the first factor is especially important when a plaintiff alleges a constitutional violation and injury. If a plaintiff in such a case shows he is likely to prevail on the merits, that showing usually demonstrates he is suffering irreparable harm no matter how brief the violation." *Id.* "It is "always in the public interest to prevent the violation of a party's constitutional rights."" *Id* (quoting *Riley's Am. Heritage Farms v. Elsasser,* 32 F.4th 707, 731 (9th Cir. 2022)). "An "individual's right to carry a handgun for self-defense outside the home" under the Second Amendment is one such constitutional right." *Id* (quoting *N.Y. State Rifle & Pistol Ass'n v. Bruen,* 142 S. Ct. 2111, 2122 (2022)). Alternatively, an "injunction is appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (internal citation omitted).

## The County is Liable Pursuant to Monell

The City is liable for violating Plaintiffs' Second Amendment rights. "Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be

5

unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 690 (1978) (footnotes omitted). Here, the City has a custom, policy or practice of waiting more than 120 days to process some CCW applications. Complaint ¶ 53.  Pursuant to *Monell*, the County is liable for this violation of Plaintiffs' Second Amendment rights.

## **Plaintiff Has a Strong Likelihood of Success on the Merits**

"[T]he Second Amendment guarantees a general right to public carry," meaning ordinary, law-abiding citizens may "'bear' arms in public for self-defense." *Bruen*, 142 S.Ct. at 2135. Accordingly, the "general right to public carry" cannot be restricted absent "*exceptional* circumstances." *Bruen*, 142 S. Ct. at 2156 (emphasis added). To determine whether a state's restriction is constitutional, the Court in *Bruen* explained that "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 142 S. Ct. at 2129–30. It is the State's burden to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. at 2127; *see also id.* at 2150 ("[W]e are not obliged to sift the historical materials for evidence to sustain New York's statute. That

6

is respondents' burden."). If the State fails to meet its burden, then the State's restrictions must be enjoined.

## Plaintiffs' Conduct is Covered by the Second Amendment's Plain Text

If the plaintiff's proposed course of conduct falls within the Second Amendment's plain text, then "the Constitution presumptively protects that conduct." *Bruen*, 142 S. Ct. at 2126. The Supreme Court has defined all of the Second Amendment's key terms. "The people" means "all Americans"; "Arms" includes "all instruments that constitute bearable arms"; and, most relevant here, to bear simply means to "carry." *District of Columbia v. Heller*, 554 U.S. 570, 580–82, 584 (2008).

Here, Plaintiffs' are part of the people.  This cannot seriously be disputed.  All plaintiffs are qualified to own guns in Hawaii. Complaint ¶¶ 58, 67, 79.  Therefore, they have all passed Hawaii's onerous criminal and mental health background checks for firearm ownership. "*Heller* explained that the words "the people" in the Second Amendment have been interpreted throughout the Constitution to "unambiguously refer[] to all members of the political community, not an unspecified subset." 554 U.S. at 580. Further, "the people" "refer[] to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that

7

community." *Id.* (citing *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265, 110 S. Ct. 1056, 108 L. Ed. 2d 222 (1990). For those reasons, the *Heller* Court began its analysis with the "strong presumption that the Second Amendment right is exercised individually and belongs to all Americans," *id.* at 581, and then confirmed that presumption." *United States v. Rahimi*, 61 F.4th 443, 451 (5th Cir. 2023). Furthermore, Plaintiffs' proposed course of conduct is protected by the Second Amendment.  That is because they wish to bear arms for lawful self-defense just like the plaintiffs in *Bruen.*

The Supreme Court's binding determination of the text of the Second Amendment definitively resolves the question of whether Plaintiffs' proposed conduct is presumptively protected by the Second Amendment. Plaintiffs are Americans who seeks to carry bearable arms for self-defense. As in *Bruen*, these undisputed facts end the textual inquiry: "the plain text of the Second Amendment protects [Plaintiffs'] proposed course of conduct—carrying handguns publicly for self-defense." 142 S. Ct. at 2134. Accordingly, under *Bruen*'s unambiguous directions, "the burden falls on [the City] to show that [the City's waiting time] is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 2135; County "must identify a historical analogue that curtails the right to peaceably carry handguns openly for self-defense to a comparable degree, with a comparable severity, and with a comparable blanket enforcement." *Baird v. Bonta*, 81 F.4th

8

1036, 1047 (9th Cir. 2023).

The relevant time period for the historical analogue must be the Founding, centering on 1791. *Bruen*, 142 S.Ct. at 2135–36; *see also* Mark W. Smith, *'Not all History is Created Equal': In the Post-Bruen World, the Critical Period for Historical Analogues Is when the Second Amendment Was Ratified in 1791, and not 1868*, SSRN, Oct. 1, 2022, https://bit.ly/3CMSKjw. That is because "'[c]onstitutional rights are enshrined with the scope they were understood to have when the people adopted them.'" *Bruen*, 142 S. Ct. at 2136, quoting *Heller*, 554 U.S. at 634–35. Although the Court in *Bruen* noted an academic debate surrounding whether courts should look to 1868 and Reconstruction (when the Fourteenth Amendment was adopted), the Court found no need to address the point as the result with respect to carry was the same. *Bruen*, 142 S. Ct. at 2138 ("[T]he public understanding of the right to keep and bear arms in both 1791 and 1868 was, *for all relevant purposes*, the same with respect to public carry." (emphasis added)). But there can be no doubt that the actual analysis of the Court is focused on l791. *See Worth v. Harrington,* 2023 WL 2745673 at *11 (D. Minn. Mar. 31, 2023) (noting the "rather clear signs that the Supreme Court favors 1791 as the date for determining the historical snapshot of 'the people' whose understanding of the Second Amendment matters"); *See also Firearms Policy Coalition, Inc. v. McCraw*, No. 4:21-CV1245-P, 2022 WL 3656996, at *11 (N.D. Tex. Aug. 25, 2022); *See also United*

*States v. Harrison*, No. CR-22-00328-PRW, 2023 WL 1771138, at *8 (W.D. Okla. Feb. 3, 2023) (quoting *Bruen*, 597 U.S. at 83 (Barrett, J., concurring) ("[T]oday's decision should not be understood to endorse freewheeling reliance on historical practice from the mid-to-late 19th century to establish the original meaning of the Bill of Rights."). The Third Circuit agrees with this analysis and holds "that the Second Amendment should be understood according to its public meaning in 1791." *Lara v. Comm'r Pa. State Police*, No. 21-1832, 2024 U.S. App. LEXIS 1159, at *16 (3d Cir. Jan. 18, 2024) (Footnotes omitted). Moreover, *Bruen* has already instructed that historical evidence from 1791 is relevant to understanding the scope of the Second Amendment as incorporated against the states. *Bruen*, 142 S. Ct. at 2139, 2145.

Moreover, in *Bruen*, the Court noted that its past precedents had "assumed that the scope of the protection applicable to the Federal Government and States is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791." *Bruen*, 142 S. Ct. at 2137. *Bruen*'s characterization of the Court's precedents as assuming that 1791 is the proper answer is an understatement. In *Espinoza v. Montana Department of Revenue*, 140 S. Ct. 2246 (2020), for example, the Court held that "more than *30*" provisions of state law enacted "in the second half of the 19th Century" could not "evince a tradition that should inform our understanding of the Free Exercise Clause" when those provisions lacked grounding in Founding Era practice. *Id*. at 2258–59 (emphasis added). And even if modern laws

alone could demonstrate a broad tradition of a regulation, there must at least be a strong showing that such laws are common in the states, i.e., many more than six states. *See Kennedy v. Louisiana*, 554 U.S. 407, 423–26 (2008) (only six states permitting death penalty for child rapists shows national consensus against it).

The historical analogues the State points to must be "representative." Historical "outlier" requirements of a few jurisdictions or of territorial governments are to be disregarded. *Bruen*, 142 S. Ct. at 2133, 2153, 2147 n.22 & 2156. This means regulations from only a handful of states or those that cover only a small portion of the population are not enough to demonstrate that modern regulations are consistent with the Second Amendment. *Id.* at 2155 (rejecting regulations applying to only 1% of the American population); *see also Koons v. Platkin,* No. 22-7464, 2023 WL 3478604, (D.N.J. May 16, 2023) (finding regulations covering 10% and 15% of American population insufficient). *Bruen* also categorically rejected reliance on laws enacted in the Territories, including expressly "Arizona, Idaho, New Mexico, Oklahoma," holding that such laws "are most unlikely to reflect 'the origins and continuing significance of the Second Amendment' and we do not consider them 'instructive.'" *Bruen*, 142 S. Ct. at 2154 (quoting *Heller*, 554 U.S. at 614).

The historical analogues must be "relevantly similar," which is to say that they must burden ordinary, law-abiding citizens' right to carry for self-defense in a similar manner and for similar reasons. *Bruen*, 142 S. Ct. at 2132. *Bruen* held that

the inquiry into whether an analogue is proper is controlled by two "metrics" of "how and why" any restriction was historically imposed during the Founding era. *Id.* at 2133. "[W]hether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are '*central*' considerations when engaging in an analogical inquiry." *Id.* (emphasis in original). In attempting the "affirmatively prove" that its restrictions on public carry are consistent with the Nation's historical tradition, the County may refer to historical analogues at the Founding and claim those meet *Bruen*'s "how" and "why" standard. 142 S. Ct. at 2127, 2133. Here, there is no historical tradition of any delay and certainly not in excess of 120 days to exercise the constitutional right to carry. Therefore, the County's policy of doing so here violates the Second Amendment. Indeed, in *Bruen,* the Supreme Court expressly found that lengthy wait times could be subject to a Second Amendment challenge.

> [B]ecause any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, ***lengthy wait times in processing license applications*** or exorbitant fees deny ordinary citizens their right to public carry.

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2138 n.9 (2022) (emphasis added)

In numerous contexts, the Constitution forecloses conditioning the exercise of rights on lengthy waiting periods. *See, e.g.*, *Rogers v. Hacker*, 2023 WL 5529812, at *8 (S.D. Ill. Aug. 28, 2023) (finding a waiting period of *five months* to

issue a firearm owners ID card constituted a concrete injury); *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 263-64 (1974) (an Arizona statute imposing a *one-year waiting period* for new residents to become eligible for state medical assistance impermissibly interfered with the constitutional right to freedom of interstate immigration). In *Cooper v. Aaron,* 358 U.S. 1 (1958), the Supreme Court was confronted with similar bureaucratic foot dragging in implementing public school integration. Given the open defiance of the Supreme Court's opinion in *Brown I*[3] and *Brown II*,[4] the Court did not tolerate finger-pointing, simply observing that "delay in any guise in order to deny . . . constitutional rights . . . could not be countenanced, and that only a prompt start, diligently and earnestly pursued . . . could constitute good faith compliance." 358 U.S. at 7. This Court need not determine the floor for what is a "lengthy wait time" under *Bruen*, it is enough for this Court to find the delays Plaintiffs have suffered are excessive. The County should issue permits once applicants have completed their background check and CCW training course. The County's waiting time also violates the Second Amendment because the County has excessive discretion. *Bruen* commands that government may not have discretion in making determinations on Second Amendment rights.  *See Bruen*, 142 S. Ct. at 2138 n.9. (Prohibiting

---

[3] *Brown v. Board of Education*, 347 U.S. 483 (1954).
[4] *Brown v. Board of Education,* 349 U.S. 294 (1955).

governments from engaging in the "appraisal of facts, the exercise of judgment, and the formation of an opinion".) Here, how long a CCW applicant must wait is left to the unfettered discretion of County officials. This unfettered discretion violates the Second Amendment.  *See Srour v. New York City*, 2023 U.S. Dist. LEXIS 190340 (finding portions of New York City's administrative code unconstitutional because it confers officials "unfettered discretion" to determine whether firearm applicants had sufficient good moral character to possess firearms). This is especially true because the County's policy is ultra vires. The County's waiting time is ultra vires because it is unreasonable and state law requires that waiting times be reasonable. Ultra vires conduct is inherently arbitrary. *Cine SK8, Inc. v. Town of Henrietta* 507 F.3d 778, 790 (2d Cir. 2007). This argument is further developed in the substantive due process section of this brief.[5] Arbitrary government action is caused by unfettered discretion and thus violative of the Second Amendment. Plaintiffs are likely to succeed on their Second Amendment claim.

## **County's Excessive Delay Violate Procedural Due Process**

An excessive delay is a violation of procedural due process. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 547 (1985) ("At some point, a delay in

---

[5] Plaintiffs expressly incorporate and reference their arguments from their substantive due process section.

the post-termination hearing would become a constitutional violation.") The
Second Circuit's jurisprudence is illustrative of this point. In *Kuck v. Danaher*, the
litigant sued over excessive wait times like the ones at issue here. "His principal
claim is a procedural due process challenge alleging that DPS — in tandem with
the Board of Firearms Permit Examiners ("the Board") — has a practice of
improperly denying permits, unnecessarily prolonging the appeals that follow, and
then quietly resolving disputes at the last minute." *Kuck v. Danaher*, 600 F.3d 159,
161 (2d Cir. 2010). As a result, the Second Circuit found "Kuck has stated a
procedural due process claim". *Id.*

To demonstrate a claim for procedural due process a litigant must fulfill the
test laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d
18 (1976). This test requires that we balance: "(1) the private interest at stake; (2)
the risk of an erroneous deprivation of that interest through the procedures used
and the probable value (if any) of alternative procedures; (3) the government's
interest, including the possible burdens of alternative procedures." *Id.* Here, *Bruen*
expressly holds that Plaintiffs have a constitutional right to carry a firearm for
lawful self-defense. Thus, Plaintiffs have a protected liberty interest at stake in this
litigation. As to the second prong, Plaintiffs suffer an ongoing threat of erroneous
deprivation because the County will not process their applications.  Even if their
applications are eventually processed, there will be a considerable amount of time

15

where Plaintiffs were unable to carry solely due to the County's policy.

Furthermore, there is already an alternative procedure for County to use. That

being, County could simply use the process laid out in state law.[6] As the *Kuck*

Court found, the second prong is fulfilled because "[b]ecause this practice appears

to have affected a significant number of applicants, and the delay is considerable,

the second Mathews factor weighs in favor of Kuck at this stage of the

proceedings." *Kuck v. Danaher*, 600 F.3d 159, 166 (2d Cir. 2010).

As to the third prong, County has no interest in placing an indefinite delay

on Plaintiffs' applications.  As Judge Watson found in granting a preliminary

injunction in another firearms case where County was found to be violating state

law, "it is in the public interest to have the language of Hawaiʻi law enforced".

*Santucci v. City & Cty. of Honolulu*, 2022 U.S. Dist. LEXIS 213030, (D. Haw.

Nov. 23, 2022). Here, County has no interest in delaying CCW applications. For

the purposes of a due process analysis, the government must articulate some

---

[6] Many states that continue to require some form of carry licensure impose *no* waiting periods at all.  For example, Cumberland County, Pennsylvania issues Pennsylvania Licenses to Carry Firearms almost *instantaneously*, even with a required background check. *See* License to Carry Firearms, Cumberland Cnty., Pa. https://www.cumberlandcountypa.gov/3094/License-to-Carry-Firearms (last visited Jan. 31, 2024), Applicants can choose to either apply online, or on paper in person, where they wait on the premises until the background check clears and the permit is printed. Many state sheriffs across the country operate similarly—walk in, complete a background check, and walk out a few minutes later with a permit.

reason, tied to this interest, that justifies the lengthy period necessary to resolve these appeals. *See FDIC v. Mallen*, 486 U.S. 230, 242 (1988) (directing courts to examine "the justification offered by the Government for delay and its relation to the underlying governmental interest"). "[W]e cannot accept, at least without additional factual support, the months-long delay that Connecticut attempts to justify in this case." *Kuck v. Danaher,* 600 F.3d 159, 167 (2d Cir. 2010). Plaintiffs have a strong likelihood of success in their procedural due process claim. They also have a substantive due process claim because the County's conduct is ultra vires.

## County's Policy Violates Substantive Due Process Because it is Ultra Vires

"[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Foucha v. Louisiana,* 504 U.S. 71, 78 (1992). Ultra vires conduct is inherently arbitrary. *Cine SK8, Inc. v. Town of Henrietta* 507 F.3d 778, 790 (2d Cir. 2007). County's implementation of Hawaii law is ultra vires because state law requires CCW applications to be processed within a reasonable amount of time and County's delays are unreasonable. *See* H.R.S. §134-9(j). Thus, County's conduct violates substantive due process.

Under the law governing substantive due process, Plaintiffs must prove that they have a valid interest at stake. *Nunez v. City of Los Angeles*, 147 F.3d 867, 871

17

(9th Cir. 1998). Substantive due process "forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 301–02 (1993). Therefore, if there is a fundamental right at stake, a challenged government policy must survive strict scrutiny.  If not, a litigant must prove their interest was infringed in an arbitrary or irrational manner. *See "H" Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1058 (9th Cir. 2012).

Plaintiffs have a protected liberty interest at stake in their ability to carry firearms. And pursuant to *McDonald* and *Bruen*, that interest deals with a fundamental right.[7] Therefore, strict scrutiny applies. To survive strict scrutiny, a government policy must be narrowly tailored to serve a compelling state interest. *Reno v. Flores*, 507 U.S. 292, 301–02 (1993).  However, even if rational basis review applies, County's policy is unconstitutional.  Under a rational basis review a government policy must have a rational relationship to some legitimate end. *See, e. g., Heller v. Doe,* 509 U. S. 312, 319-320 (1993). Here, County's policy is inherently arbitrary and tainted with fundamental irregularities due to the fact it

---

[7] "[I]t is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty." *McDonald v. City of Chicago*, 561 U.S. 742, 778 (2010).

does not comply with state law. As the Second Circuit holds, this violates substantive due process even under rational basis review.

In *Cine SK8, Inc. v. Town of Henrietta* 507 F.3d 778 (2d Cir. 2007) the Second Circuit found ultra vires conduct violates due process. "[I]f the Town Board did not have authority for the actions it took regarding Fun Quest's permit— as it appears it did not—the Board's actions were ultra vires and, as a result, sufficiently arbitrary to amount to a substantive due process violation." *Id.* at 790. In this case, a due process violation exists because County claims authority to regulate CCW applications pursuant to state law. County's failure to process permits within a reasonable amount of time is an ultra vires act which is inherently arbitrary. This violates substantive due process.

County is violating Plaintiffs' Due Process rights through its ultra vires conduct. County is required under state law to process permits within a reasonable amount of time. *See* H.R.S. § 134-9(j). County has failed to do this. Therefore, County's "actions were ultra vires and, as a result, sufficiently arbitrary to amount to a substantive due process violation." *Id* at 790. In *Cine SK8,* the litigants were able to invoke Due Process because they were able to establish a protected property interest. Here, Plaintiffs may invoke Due Process because they have a protected liberty interest in their right to carry a firearm for purposes of lawful self-defense. As in *Cine SK,* County's ultra vires conduct is inherently arbitrary. There

19

is no compelling government interest in County delaying CCW applications for as along as it has. And even if County could produce a government interest, their policy of delaying processing CCW's applications is not narrowly tailored. Thus, County's policy fails strict scrutiny. Even if rational basis review were to apply, County's ultra vires conduct is so arbitrary that it is unconstitutional pursuant to *Cine Sk*. County's conduct violates substantive due process. For the reasons laid out above, Plaintiffs are likely to succeed on the merits of their claims.

## **Plaintiffs will suffer irreparable harm**

Here, Plaintiffs suffer irreparable harm every moment their CCW applications go unprocessed. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). The Ninth Circuit has imported the First Amendment "irreparable-if-only-for-a-minute" rule to other rights and, in doing so, has held deprivation of those rights is irreparable harm per se. *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997). "This analysis does not change where the constitutional violation at issue is a Second Amendment violation because the right to peaceably bear arms to defend oneself is

20

not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees."" *Baird v. Bonta*, 81 F.4th 1036, 1046 (9th Cir. 2023). (quoting *McDonald v. City of Chi.*, 561 U.S. 742, 780 (2010). *See also Ezell v. City of Chi.,* 651 F.3d 684. 700 (7th Cir. 2011) (a deprivation of the right to arms is "irreparable and having no adequate remedy at law."). This Court has found Second Amendment violations constitute irreparable harm. *Fisher v. Kealoha,* 2012 U.S. Dist. LEXIS 90734, *40, 2012 WL.

## **Granting the PI is in the Public Interest and Serves Equity**

The last two preliminary injunction elements merge when the government is the defendant. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citation omitted). When challenging government action that affects the exercise of constitutional rights, "[t]he public interest . . . tip[s] sharply in favor of enjoining the" law. *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009). As the Ninth Circuit has made clear, "all citizens have a stake in upholding the Constitution" and have "concerns [that] are implicated when a constitutional right has been violated." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). The State "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013); *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable . . . to allow the state . . . to violate the requirements

21

of federal law." (citations omitted). "[W]e *presume* that a constitutional violation causes a preliminary injunction movant irreparable harm and that preventing a constitutional violation is in the public interest." *Baird v. Bonta*, 81 F.4th 1036, 1046 (9th Cir. 2023). On the other hand, granting an injunction will end the ongoing violation of Plaintiffs' rights. Americans with CCW permits are an overwhelmingly law-abiding demographic, as three courts have recently confirmed, including in this district. *See May v. Bonta*, 2023 WL 8946212, at *19 (C.D. Cal. Dec. 20, 2023) ("Simply put, CCW permitholders are not the gun wielders legislators should fear"); *Wolford v. Lopez*, 2023 WL 5043805, at *32 (D. Haw. Aug. 8, 2023) ("the vast majority of conceal carry permit holders are law-abiding"); and *Koons v. Platkin*, 2023 WL 3478604, at *108 (D.N.J. May 16, 2023) ("despite ample opportunity for an evidentiary hearing, the State has failed to offer any evidence that law-abiding responsible citizens who carry firearms in public for self-defense are responsible for an increase in gun violence"). It is in the public interest for this Court to compel County to process Plaintiffs' applications.

### **Waiver of Bond is Proper and Appropriate Under These Circumstances**

"Notwithstanding its seemingly mandatory language," stating that the movant must provide "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained," "Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Weaver v. City of Montebello*, 370 F.Supp.3d 1130, 1139

(C.D. Cal. 2109) (quoting *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009)). The court may properly dispense with any such bond requirement when "the balance of ... equities weighs overwhelmingly in favor of the party seeking the injunction," *East Bay Sanctuary Covenant v. Trump*, 349 F.Supp.3d 838, 869 (N.D. Cal. 2018) (quoting *Elliott v. Kiesewetter*, 98 F.3d 47, 60 (3d Cir. 1996)), when "there is no realistic likelihood of harm to the defendant from enjoining his or her conduct," *Johnson* at 1086 (internal quotations omitted), and where the plaintiffs have a "likelihood of success on the merits," *People of the State of Cal. ex rel. Van De Kamp v. Tahoe Regency Planning Agency*, 766 F.2d 1319, 1326 (9th Cir. 1985). All these factors are true here, as illustrated above, thus rendering a waiver both proper and appropriate.

## This Court Should Consolidate Pursuant to Rule 65(a)(2)

Rule 65(a)(2) of the Federal Rules of Civil Procedure state "[b]efore or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. This Court should do so here because "[g]iven the expedited and predominately legal nature of the questions presented by this litigation," the "evidence presented by the parties through the briefing and hearing on the motions for preliminary injunctions will be relevant to adjudicating the Plaintiffs' claims on the merits*." Donald J. Trump for President, Inc. v. Bullock*, No. CV 20-66-H-DLC, 2020 U.S. Dist. LEXIS 169794, at *2 (D.

Mont. Sep. 16, 2020). Plaintiffs are currently suffering irreparable harm and would thus benefit from a consolidated hearing.

## **Conclusion**

A preliminary injunction should be issued which compels County to immediately process plaintiffs' CCW applications and compel County to process all applications within 120 days.

Dated: March 1, 2024.

Respectfully submitted,

*Counsel for Plaintiff*

/s/ *Kevin Gerard O'Grady*
Kevin O'Grady

*/s/ Alan Beck*
Alan Alexander Beck

24